# IN THE DISTRICT COURT FOR THE UNITED STATES OF AMERICA
## WESTERN DISTRICT OF MICHIGAN
### Southern Division

**JANE DOE NO. 2,**

        Plaintiff,     CASE NO. 25-CV-       -
             **HONORABLE:**

**v.**

**CLINTON COUNTY, MICHIGAN,** a state of Michigan municipality
**SHERIFF SEAN DUSH,** individually and as employee/agent Clinton County
**CLINTON COUNTY SHERIFF'S OFFICE,**
**JOHN DOES**, to be named individually and as employees/agents Clinton County
**ADVANCED CORRECTIONAL HEALTHCARE, INC.,** an Illinois corporation

      Defendants
_____/

**DRAGON LAWYERS PC**
*Jacob A. Perrone (P71915)*
Attorneys for Plaintiff
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
Phone: (844) JAKELAW
jacob.perrone@yahoo.com
_____/

## PLAINTIFF JANE DOE NO. 2'S COMPLAINT PURSUANT TO *42 USC §1983*
_____/

    /s/ *JP*

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

***NOW COMES*** Plaintiff*,* **Jane Doe No. 2**, (hereinafter "*Jane Doe No. 2*") by and through her attorneys, **DRAGON LAWYERS PC***,* and *Jacob Alan Perrone, Esq.*, and for her Complaint states as follows:

1



## COMMON ALLEGATIONS

1. This action arises under 42 USC §1983. Jurisdiction is conferred by 28 USC §1331, §1343(a)(3), and (4).

2. *Jane Doe No.2* is a resident of the County of Clinton, State of Michigan, in the Western District of Michigan.

3. Defendant Clinton County was at all pertinent times a political sub-unit of the State of Michigan, in the Western District of Michigan. (hereinafter referred to as "*Clinton County*") *Clinton County* was at all pertinent times legally obligated to enact policies, procedures, protocols, and customs, both written and unwritten, for its law enforcement officers to strictly follow, that conform with the laws of the state of Michigan and the laws of the United States, including the United States Constitution and is the body responsible for the control and oversight of its departments, agencies and facilities.

4. *Clinton County* is responsible for the operation and staffing of the *Clinton County Sheriff's Office* (the "*CCSO*") and the *Clinton County Jail*, ("*CCJ*") with said operating and staffing including the organization, training, operation and discipline of staff correctional officers and medical and mental health personnel at that facility.

5. At all times relevant, Defendant, *Advanced Correctional Healthcare, Inc.* (hereinafter "*ACH*"), was and is an Illinois corporation, doing business in *Clinton County*, and contracted with *Clinton County* to provide medical services to *CCJ* inmates and is responsible for the control and oversight of the operation and staffing of medical personnel and facilities at *CCJ*, including the organization, hiring, training, operation, supervision, retention and discipline of medical staff personnel at *CCJ* and the medical training of *Clinton County* correctional employees.

Dragon Lawyers PC ©
Award Winning Lawyers

6. *Sheriff Sean Dush* is a resident of Clinton County Michigan, in the Western District of Michigan, and at all material times was employed by *CCSO* as Sheriff. ("*Sheriff Dush*") He was a policy maker for the *CCJ* and represented the ultimate repository of law enforcement power in the *CCJ*. *Sheriff Dush* was responsible for the supervision and oversight of *CCJ* employees including but not limited to deputies and *CCJ* medical personnel including those contracted through *ACH*. As Clinton County Sheriff, *Sheriff Dush* exercised administrative, command, fiscal and policy making authority over the *CCSO and the CCJ*, and at all times herein was acting under color of state law. *Sheriff Dush* was acting within the scope of his employment and under the color of State law and is being sued in his official capacity as a policy maker and Sheriff of *Clinton County*.

7. As the *Clinton County* Sheriff, *Sheriff Dush*, was employed by statute to protect the lives and property of *Clinton County* citizens by enforcing State laws and local ordinances, investigating crimes, and detaining inmates remanded to the *CCJ* in a manner which maintains the highest degree of professional excellence, integrity, and courtesy. His duties also included performing law enforcement, jail and support missions in a humane manner which reflects sensitivity to the dignity and equal rights of all citizens and reinforces the values of the community. These duties included addressing misconduct and discipline of the sergeants, officers, and medical staff working within the *CCJ*.

8. At all times relevant, each named individuals were employees/agents of *Clinton County, CCSO,* and/or the *CCJ*, engaging in the exercise of a governmental function and conduct within the course, scope and authority of his/her/their employment/agency with *Clinton County, CCSO,* and/or the *CCJ*.



9. *Sheriff Dush*, *John Does*, and any other yet to be named *CCJ* deputies or medical personnel, both individually and in their capacity as an agent of *Clinton County*, *CCSO*, *CCJ* and/or *ACH*. (hereinafter referred to as *"CCJ Staff"* unless identified specifically individually otherwise*)*

10. When the events alleged in this complaint occurred, *CCJ Staff* were acting within the scope of their employment and under color of law. At all material times, *CCSO* employed *CCJ Staff* and is liable for their acts. The *CCJ* is also liable because of its policies, practices, and customs, which led to this complaint of violation.

11. Defendants are all being sued in their individual and official capacities. Defendant *Clinton County* is being sued under a *Monell* theory of liability for enacting policies, whether written or unwritten, that demonstrated deliberate indifference of suspects in its custody, such as *Jane Doe No. 2*. Such deliberate indifference is directly responsible for *Jane Doe No. 2's* significant and continuing debilitating physical and mental injuries.

12. This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. §§ 1331 & 1343 and has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as the claims arise out of occurrences that took place within the Western District of Michigan, Southern Division in the City of St. Johns, Clinton County, Michigan.

## FACTUAL BACKGROUND

1. On or about March 22, 2024, *Jane Doe No. 2* was arrested for allegedly drinking while on bond and held at the Clinton County Jail (the "*CCJ*") pending a March 28, 2024, Bond Violation Hearing.



*Jane Doe No. 2* started vomiting while at *CCJ* almost immediately upon being lodged and showed consistent, and objective signs of medical distress that *CCJ Staff* were deliberately indifferent to.

2. The preserved videos will show the *CCJ Staff's* level of aggravation and deliberate indifference to *Jane Doe No. 2*. She was held on a bond violation as a punishment without care and she almost had to pay the ultimate price, and her family almost had to bury her.

3. The Eighth Amendment of the Constitution protects prisoners from "cruel and unusual punishment." In 1976, the Supreme Court said in *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251, 260 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the [8th] Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.").

4. On March 28, 2024, at 8:30 am *Jane Doe No. 2* had a bond violation hearing before the **65A Clinton County District Court** (the "*District Court*"), and the *District Court* and the presiding judge ordered her to be released from custody immediately due to her obvious health distress due to *CCJ Staff* 's deliberate indifference to her health and wellbeing. She was taken directly from *CCJ* to *The University of Michigan Sparrow Clinton Hospital* ("*Sparrow*"), where she was admitted.

5. On March 28, 2024, *Jane Doe No. 2* presented at *Sparrow* and she was observed to have a loss of consciousness with shock. She went into *Torsades* cardiac arrest at 2:41 pm and flatlined for 5-10 seconds before her *Defibrillator* restored her pulse. Bigeminy was noted on the monitor, which is a heart rhythm that has an extra heartbeat between every normal one. *Jane Doe No. 2* has had no incident of cardiac arrest other than March 28, 2024, aside from July 2022, when her subcutaneous Boston Scientific ICD model number A219 cardiac defibrillator ("*Defibrillator*") was installed. *Torsades* is a ventricular tachycardia that results from very fast heart rhythm. A



normal pulse rate is from 60 to 100 beats a minute. A fast heartbeat in your ventricles is more than 100 beats a minute. *Torsades* leads to a heart rate anywhere between 150 to 300 beats a minute. *Torsades* has a presenting symptom of cardiac death in up to 10% of cases.

6.  *Jane Doe No. 2* was sent to the Intensive Care Unit (the "*ICU*") due to *Defibrillator* firing while she had significant electrolyte abnormalities directly attributable to her cardiac incident that went entirely overlooked by *CCJ Staff*. She acquired *long term QT syndrome* ("*LQTS*") from electrolyte abnormalities. *LQTS* causes sudden fainting and seizures. *LQTS* is a heart signaling disorder that can cause fast, chaotic heartbeats (*arrhythmias*). A heart signaling disorder is also called a heart conduction disorder. Some people are born with altered DNA that causes *LQTS* (*congenital long QT syndrome*). *LQTS* may also occur later in life (*acquired long QT syndrome*) as the result of some medical conditions, certain drugs, or mineral imbalances.

7.  *CCJ* only had one nurse on duty, and the nurse refused to provide any care to *Jane Doe No. 2* as will be shown by preserved videos that has become the standard for inmate care at *CCJ*. *Jane Doe No. 2* is more likely to die and or suffer medical complications in the future because of *CCJ Staff's* deliberate indifference, as is evidenced by this extremely preventable cardiac event.

8.  The fact that on March 28, 2024, the *District Court* judge was able to readily identify that *Jane Doe No. 2* was suffering medically and needed immediate medical attention. This clearly shows just how outrageous *CCJ Staff's* deliberate indifference was to her health and wellbeing.



9. *Jane Doe No. 2* informed *CCJ staff* multiple times including during her initial medical screening upon arrest that she becomes hypokalemic and hypomagnesemia during health episodes, which leads to electrolyte deficiency.

10. The *District Court* also ordered that *Jane Doe No. 2* return to the *CCJ* after receiving medical treatment at *Sparrow*, which just seems asinine and arbitrary and added insult to injury.  The *CCJ Staff's* deliberate indifference to her health and wellbeing was an objective and glaringly obvious denial of *Jane Doe No. 2's* basic medical needs, without any safeguards leading to her being unlawfully imprisoned and held against her will to potentially die.

14. *Jane Doe No. 2* was held for 6 days without basic care at *CCJ,* and her medical condition was allowed to deteriorate, leading to her heart stopping.  This physical injury was entirely preventable, resulting from gross negligence, reckless disregard, and shows a high level of disregard for basic human rights.

15. *Jane Doe No. 2* alleges that *CCJ* is far more primitive than jails similarly situated and that her ordeal and attendant physical injuries were coupled with significant embarrassment, indignity, and great pain and suffering mentally and emotionally stemming directly from the physical injury.

16. *Jane Doe No. 2* medical condition left her unable to appropriately care for her own health and the *CCJ Staff's* deliberate indifference to her visible need for assistance is egregious as will be shown through video evidence.   Her concerns were brushed off by *CCJ Staff* despite her medical issues being widely disclosed to *CCJ Staff*, who were responsible for her care and wellbeing because she was a custodial inmate.



17. If *CCJ Staff* had appropriate policies and procedures on how to deal with inmates, including and especially related to those who have high-risk medical issues, this could have been avoided entirely. Instead, the level of *CCJ Staff's* deliberate indifference almost proved to be fatal. This is an issue that permeates *CCJ* and has affected other inmates as well. Despite *CCJ* and *ACH* policies and procedures, *CCJ Staff* adhered to informal customary policies exhibiting a complete disregard and deliberate indifference of inmates' health and/or sanitary and/or safety needs as illustrated by the facts as fully set forth above as well as the following:

a) Upon information and belief, prior to *Jane Doe No. 2's* incarceration, another inmate had overdosed on fentanyl while in the care and custody of *CCJ Staff*.

b) Upon information and belief, despite multiple requests for help from *CCJ Staff*, an inmate with MRSA did not receive medical attention until the infection on his face developed pus.

c) Upon information and belief, another inmate with a genital infection was not seen until the area had become swollen and exhibited signs of pus.

d) Upon information and belief, inmates, including *Jane Doe No. 2*, were refused the contracted for medical attention and care that *CCJ* was obligated to provide until inmates' medical conditions became so severe that *CCJ* was forced to send them to the hospital.

e) Upon information and belief, inmates were often not given toilet paper and told to "*fight for it.*" If they were not given toilet paper or could not acquire it, they were left to have a bowel movement and then take a shower to clean themselves.

f) Upon information and belief, inmates were often not given mattresses upon arrival at *CCJ* and were also told to "*fight for it.*"

g) Upon information and belief, upon arrival at *CCJ*, some inmates did not receive any medical screening and/or it was woefully limited.

h) Upon information and belief, when inmates were detoxing at *CCJ*, they would not receive medical attention for days despite requesting assistance.



    i) Upon information and belief, inmates were administering medications to other inmates, including but not limited to, insulin, administering blood sugar tests, and administering other medications.

    j) While incarcerated at *CCJ*, a diabetic inmate had low blood sugar, communicated this with *CCJ Staff* and was ignored. Finally, the inmate received glucose tablets, however, *CCJ Staff* would not give her the correct dose, causing her blood sugar fall to alarming levels by the time she was released; and.

    k) Against the policies and procedures of *CCJ*, video surveillance shows deputies dragging an inmate into a cell and covering up all the windows with Velcro padding so that it was impossible to see and/or observe the inmate inside of the cell.

## COUNT 1
## 4th, 5th, and 14th Amendment Violations

18.    *Jane Doe No. 2* incorporates by reference prior paragraphs.

19.    *Jane Doe No. 2's* constitutionally protected rights that *CCJ Staff* violated include the following:

    a)    the right to liberty protected in the substantive component of the Due Process Clause of the 5th and 14th Amendments, which includes personal safety, freedom from captivity, and a right to medical care and protection

    b)    the right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the 14th Amendment.

20.    *CCJ Staff* acting under color of state law, took *Jane Doe No. 2* into physical custody, not allowing her transfer by medical personnel to the hospital, as was requested by *Jane Doe No. 2,* who repeatedly requested that she be provided with minimal medical care. In doing so, they established a special custodial relationship with *Jane Doe No. 2*, giving rise to affirmative duties on their part to secure for *Jane Doe No. 2* the constitutionally protected rights identified above.



21. *CCJ Staff's* violation of their affirmative duties, their intervention in preventing *Jane Doe No. 2's* transfer to the hospital, and the delay caused by their desire to hold her prevented others from providing care to protect her constitutionally protected rights when she couldn't. While *CCJ Staff's* custodial control of *Jane Doe No. 2* was a direct and proximate cause of the subsequent deprivation of her constitutional rights described above.

22. *CCJ Staff*, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for *Jane Doe No. 2's* constitutional rights. Further, their actions in detaining her given her medical condition, showed deliberate indifference to *Jane Doe No. 2's* serious medical needs and deprived her of constitutionally protected rights.

23. *CCJ's* detention of *Jane Doe No. 2* for 6 days while her health was obviously deteriorating was more than reckless.  It was a malicious indifference.  *CCJ Staff* acted with a reckless and knowing disregard of an excessive risk to *Jane Doe No. 2's* health or well-being. She was unlawfully and unreasonably detained at the *CCJ* where she was isolated from receiving medical care. She has a defibrillator and *CCJ Staff* was told that she felt faint and yet they remained entirely indifferent to her basic health and wellbeing.

24. As a direct and proximate result of *CCJ Staff's* conduct, *Jane Doe No. 2* suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights described above.

25. *CCSO*, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as *Jane Doe No. 2*.

10



26. As a direct and proximate result of these policies, practices, and customs, *Jane Doe No. 2* was deprived of Plaintiff's constitutionally protected rights described above.

**WHEREFORE,** Plaintiff, ***Jane Doe No. 2***, requests that this court enter judgment against Defendants in an amount consistent with the damages sustained.

## COUNT 2
### *8th Amendment Violations*

27. Plaintiff incorporates by reference prior paragraphs.

28. The 8th Amendment of the U.S. Constitution provides, in pertinent part, that excessive bail may not be required, nor excessive fines be imposed nor cruel and unusual punishments be inflicted.

29. *CCJ Staff's* decisions (a) to detain *Jane Doe No. 2* at the *CCJ* while knowing her medical condition and knowing she could be immediately transported to *Sparrow*, and (b) to take *Jane Doe No. 2* into their custody, creating a special relationship with her, violated her constitutionally protected 8th Amendment rights by exhibiting deliberate indifference to her serious medical needs as a result of their failure to adequately protect her and/or monitor her known and serious medical condition.

30. *CCJ Staff's* decision to detain *Jane Doe No. 2* for 6 days before her heart stops and she almost dies, showed deliberate indifference to her serious medical needs. This violated *Jane Doe No. 2's* constitutionally protected Eighth Amendment right to be free from cruel and unusual punishment.

31. As a direct and proximate result of *CCJ Staff's* actions, *Jane Doe No. 2* suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights.

**WHEREFORE,** Plaintiff, ***Jane Doe No. 2,*** requests that this court enter judgment against Defendants in an amount consistent with the significant physical and mental health issues resulting from the mistreatment.



**PRAYER FOR RELIEF**

Plaintiff, *Jane Doe No. 2*, respectfully requests that this Court enter judgment against Defendants jointly and severally, both individually and as agents of *Clinton County* in an amount consistent with the damages sustained, award *Jane Doe No. 2's* reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988, and award all other further relief to which *Jane Doe No. 2* may be entitled including exemplary and punitive damages if discovery so merits.

Respectfully submitted,

**DRAGON LAWYERS PC**

Dated: April 2, 2025        /s/*Jacob A. Perrone*_____
                            Jacob A. Perrone (P71915)
                            Attorney for Plaintiff
                            325 East Grand River Ave., suite 250
                            East Lansing, MI 48823
                            (844) JAKELAW
                            jacob.perrone@yahoo.com

**DEMAND FOR TRIAL BY JURY**

*Jane Doe No. 2* demands a trial by jury for all issues so triable herein.

Respectfully submitted,

**DRAGON LAWYERS PC**

Dated: April 2, 2025        /s/*Jacob A. Perrone*_____
                            Jacob A. Perrone (P71915)
                            Attorney for Plaintiff
                            325 East Grand River Ave., suite 250
                            East Lansing, MI 48823
                            (844) JAKELAW
                            jacob.perrone@yahoo.com

