## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

Hayley Mae Essenberg

      Plaintiff,

v.

Clinton County et al

      Defendants,

Case No.: 1:25-cv-00368
District Judge: Robert J. Jonker
Magistrate Judge: Ray Kent

---

DRAGON LAWYERS, PC
Jacob A. Perrone (P71915)
*Attorney for Plaintiff*
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
(844) 525-3529
jacob.perrone@yahoo.com

CHAPMAN LAW GROUP
Devlin K. Scarber (P64532)
*Attorney for Advanced Correctional*
*Healthcare, Inc.*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

CUMMINGS MCCLOREY DAVIS & ACHO PLC
Timothy S. Ferrand (P39583)
*Attorney for Clinton County Defendants*
19176 Hall Road, Suite 205
Clinton Township, MI 48038
(586) 228-5600
tferrand@cmda-law.com

---

### DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 4(m) AND FED. R. CIV. P. 12(b)(6)

NOW COMES Defendant ADVANCED CORRECTIONAL HEALTHCARE, INC., ("ACH"), by and through its counsel, CHAPMAN LAW GROUP, and for its Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(m) and Fed. R. Civ. P. 12(b)(6), states as follows:

1.      On April 2, 2025, Plaintiff, through her counsel, filed her Complaint initiating this matter. (**ECF No. 1**).

2.      Plaintiff's Complaint names as Defendants Clinton County, Sheriff Dush, Clinton County Sheriff's Office, John Doe employees/agents of Clinton County, and Advanced

Correctional Healthcare, Inc. (hereinafter "ACH").  Plaintiff's Complaint is titled as a 42 U.S.C. § 1983 Complaint, and alleges violations of her Fourth, Fifth, Fourteenth, and Eighth Amendment rights.  *Id.*

3.      Plaintiff's allotted time to serve ACH expired in this matter on July 1, 2025. (**ECF No. 13**). For the reasons detailed in the accompanying brief, with Plaintiff failing to file any motions to extend, and failing to properly respond to the Court's October 23, 2025 show cause order requiring Plaintiff to demonstrate her efforts to serve ACH during the allotted 90-day time period for service, and failing to demonstrate good cause for her failure to serve within the allotted time and why the case should not be dismissed (**ECF No. 13, PageID.90**),  Defendant ACH moves this Honorable Court to dismiss this matter against ACH pursuant to Fed. R. Civ. P. 4(m) for untimely and improper service.

4.       Additionally, for reasons stated in more detail below, Plaintiff's Complaint fails to state a claim against Defendant ACH, and therefore ACH moves the Honorable Court to dismiss this matter against ACH pursuant to Fed. R. Civ. P. 12(b)(6).  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005); and *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

5.      On December 8, 2025, Counsel for Defendant contacted Plaintiff's counsel to discuss the nature of the motion, the legal basis, and the relief requested. Concurrence was denied.

WHEREFORE, Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint Against ACH Pursuant to Fed. R. Civ. P. 41(m) and Fed. R. Civ. P. 12(b)(6) in its entirety and provide any and all such relief as is deemed just and equitable.

Dated:  December 8, 2025

Respectfully submitted,
CHAPMAN LAW GROUP
*/s/Devlin Scarber*
Devlin K. Scarber (P64532)
Attorney for Advanced
Correctional Healthcare, Inc.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

Hayley Mae Essenberg

      Plaintiff,

v.

Clinton County et al

      Defendants,

Case No.: 1:25-cv-00368
District Judge: Robert J. Jonker
Magistrate Judge: Ray Kent

---

DRAGON LAWYERS, PC
Jacob A. Perrone (P71915)
*Attorney for Plaintiff*
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
(844) 525-3529
jacob.perrone@yahoo.com

CHAPMAN LAW GROUP
Devlin K. Scarber (P64532)
*Attorney for Advanced Correctional Healthcare, Inc.*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

CUMMINGS MCCLOREY DAVIS & ACHO PLC
Timothy S. Ferrand (P39583)
*Attorney for Clinton County Defendants*
19176 Hall Road, Suite 205
Clinton Township, MI 48038
(586) 228-5600
tferrand@cmda-law.com

---

## BRIEF IN SUPPORT OF DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 4(m) AND FED. R. CIV. P. 12(b)(6)

## PROOF OF SERVICE

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ................................................................................... iii

INDEX OF EXHIBITS ......................................................................................... v

STATEMENT OF ISSUES PRESENTED ............................................................ vi

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ........................... vii

I.    STATEMENT OF FACTS ........................................................................... 1

   A.    Procedural Facts ................................................................................. 1

   B.    Substantive Facts ............................................................................... 3

II.    LAW AND ARGUMENT ............................................................................ 5

   A.    Plaintiff's Complaint Should be Dismissed Against ACH Pursuant to Fed. R. Civ. P. 4(m) for untimely and improper service. ................................................................. 5

   B.    Plaintiff Has Failed to State a *Monell* Claim Against ACH Under 42 USC § 1983 .......... 12

III.    CONCLUSION AND RELIEF REQUESTED ................................................. 19

# INDEX OF AUTHORITIES

CASES

*Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354 (6th Cir. 2013) ................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ vii, 19

*Bass v. Experian Info Solutions, Inc*, 2025 LX 437145, at *1-2 (E.D. Mich., Oct. 22, 2025) ....... 6

*Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. vii, 19

*Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) ...................................................................... 15

*City of Taylor Gen. Employees Ret. Sys. v. Astec Indus.,* 29 F.4th 802 (6th Cir. Mar. 31, 2022)..16

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................................................. 16

*Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987) ............................................................ 12

*Directv, Inc v. Treesh*, 487 F3d 471 (6th Cir., 2007)................................................................. 15

*Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996) ............................................................ 13

*Doshi v. Gen. Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016)…………………………………..16

*Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ..................... 15

*Farmer v. Brennen*, 511 U.S. 825 (1994) .................................................................................. 16

*Friedman v. Estate of Presser*, 929 F.2d 1151 (6th Cir. 1991)............................................. 6, 7, 9

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993) ...................................................... 12

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)....................................................... 13

*Gregory v. Shelby County*, 220 F.3d 433 (6th Cir. 2000) ........................................................... 15

*Grote v. Kenton Cnty.*, 85 F.4th 397 (6th Cir. Oct. 26, 2023) .................................................... 16

*Habib v. GMC*, 15 F3d 72 (6th Cir., 1994).................................................................................. 6

*Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012)...................................................... 12

*In re Travel Agent Comm'n*, 583 F.3d 896 (6th Cir. 2009) ......................................................... 14

*Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005)....................................................................... 12

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) .................................................................. 14

*Kircher v. City of Ypsilanti*, 2006 U.S. Dist. LEXIS 72312, *5 (E.D. Mich., Oct. 4, 2006)......... 6

*Martin v. United States Wireless AT&T*, 765 F Supp 3d 756 (S.D. Ill., 2025)............................ 11

*Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682 (6th Cir. 2013) ............................ 12, 13, 14

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................................. 13

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011)................. 19

iii

*Nieves v. Kieker AG*, 2020 U.S. Dist. LEXIS 201606, *5-6 (E.D. Mich., Oct. 29, 2020) ........... 10

*Reilly v. Vadlamudi,* 680 F.3d 617 (6th Cir. 2005)...................................................................... 16

*Rizzo v. Goode*, 423 U.S. 362 (1976)........................................................................................... 15

*Robertson v. Lucas*, 753 F3d 606 (6th Cir., 2014)........................................................................ 17

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988) ................................ 17

*Searcy v. City of Dayton*, 38 F.3d 282 (6th Cir. 1994) ................................................................ 12

*Staudte v. Abrahams*, 172 F.R.D. 155 (E.D. Pa. 1997).................................................................. 10

*Tam Travel, Inc v. Delta Airlines, Inc*, 583 F3d 896 (6th Cir., 2009) .......................................... 15

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) .............................................. 12, 13

*Turley v. Ackley*, 2008 U.S. Dist. LEXIS 24576, 2008 WL 820393 at *2-3 (N.D. Ohio March 25, 2008)............................................................................................................................................ 6

*United States v. Gluklick*, 801 F2d 834 (6th Cir., 1986).................................................................. 7

*Walker v. Brooke Corp.*, 2009 U.S. Dist. LEXIS 50909, *5 (E.D. Mich., Jun. 17, 2009) ........... 10

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008)...................................... 19

*Winkler v. Madison Cty.*, 893 F.3d 877 (6th Cir. 2018) ............................................................... 12

## STATUTES

MCR 2.105(D) ................................................................................................................................. 10

42 U.S.C. § 1983…………………………………………………………………………....1, 17

## RULES

Fed. R. Civ. P. 4(m) .............................................................................................................. 1, 5, 11

### <u>INDEX OF EXHIBITS</u>

**EXHIBIT A**   https://mibusinessregistry.lara.state.mi.us/search/business re ACH.

**EXHIBIT B**   *Martin v. United States Wireless AT&T*, 765 F Supp 3d 756, 762 (S.D. Ill., 2025)

## <u>STATEMENT OF ISSUES PRESENTED</u>

A. SHOULD PLAINTIFF'S COMPLAINT AGAINST ACH BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(M)?

Defendant Answers:                                    YES.
Plaintiff Answers:                                      NO.


B. SHOULD PLAINTIFF'S COMPLAINT AGAINST ACH BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)?

Defendant Answers:                                    YES.
Plaintiff Answers:                                      NO.

## CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *United States v. Oakland Physicians Med Ctr, LLC*, 44 F.4th 565, 568 (6th Cir., 2022). Pursuant to Fed. R. Civ. P. 41(b), a failure to serve the complaint within the time allotted by the court's order extending service further requires dismissal.  See also **ECF No. 13, PageID.90**, this Court's Order to Show Cause stating that Plaintiff's claims against ACH were subject to dismissal pursuant to Fed. R. Civ. P. 4(m) for Plaintiff's failure to complete service on ACH within the allotted timeframe.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A court may decide a motion to dismiss on the basis of the pleadings alone. *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

"Plaintiff must state a plausible constitutional violation against each named defendant. "[T] the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted).

Advanced Correctional Healthcare ("ACH") cannot be held liable under the theory of *respondeat superior*. *Monell v. Department of Social Servs.*, 436 U.S. 658, 663 (1978); *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (1983); *Street v. Corrections Corporation of America*, 102 F.3d 810, 817-818 (6th Cir. 1996). To state a claim under § 1983 against ACH, a plaintiff must plead a claim of a policy, practice, or custom by ACH that is allegedly unconstitutional, and that explanation must be specific, *i.e.*, "to satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)), cert. denied, U.S., 114 S. Ct. 1219, 127 L. Ed. 2d 565 (1994) (Emphasis added). *See also, Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).

"There can be no liability under Monell without an underlying constitutional violation" by an ACH employee." *Robertson v. Lucas*, 753 F3d 606, 622 (6th Cir., 2014).

# I.    STATEMENT OF FACTS

## A.  Procedural Facts

On April 2, 2025, Plaintiff filed her original Complaint in this matter, naming Clinton County, Sheriff Dush, Clinton County Sheriff's Office, John Doe employees/agents of Clinton County, and Advanced Correctional Healthcare, Inc. (hereinafter "ACH").   (**ECF No. 1**). Plaintiff's Complaint is titled as a 42 U.S.C. § 1983 Complaint, and alleges violations of her Fourth, Fifth, Fourteenth, and Eighth Amendment rights.  *Id.*  Pursuant to Fed. R. Civ. P. 4(m), Plaintiff was required to serve ACH within ninety (90) days after the Complaint was filed, i.e., by July 1, 2025.

On April 28, 2025, the Court entered an order striking Plaintiff's original Complaint (**ECF No. 1**) because Plaintiff's Complaint contained a dragon cartoon logo that was embedded on each page of the Complaint. (**ECF No. 6, PageID.32**).   The Court ordered Plaintiff to file an Amended Complaint with the same allegations but without the cartoon logo.  (**ECF No. 6**).

On May 5, 2025, Plaintiff filed her First Amended Complaint (**ECF No. 8**), naming the same parties and setting forth the exact same allegations, verbatim, but without the dragon logo. According to the Court's docket, over 170 days went by after filing Plaintiff's Amended Complaint without Plaintiff serving ACH.

On October 23, 2025, after nearly 204 days since filing the lawsuit, 114 days after the expiration of the original 90-day period by which Plaintiff was to serve the original Complaint, and171 days after filing the Amended Complaint, the Court entered a show cause order against Plaintiff, ordering that Plaintiff's claims are subject to dismissal for failure to timely serve. (**ECF No. 13**).  The show cause order required Plaintiff, in writing, to show why her claims against ACH should not be dismissed without prejudice for Plaintiff's failure to have timely completed service.

(*Id.*). If Plaintiff failed to show good cause for why she had not timely served ACH, the order provided that the Court would enter an order dismissing ACH.  (*Id.* at **PageID.90**).

On November 9, 2025, instead of responding, in writing, to the show cause order explaining her actions to serve ACH for the first 204 days since filing her lawsuit, Plaintiff filed a Proof of Service with the Court indicating that on November 6, 2025, she allegedly served ACH via certified mail at CT Corporation Services by mailing the Summons and Complaint to a P.O. Box in Chicago, Illinois.

ACH is not aware of having ever been served on this case on November 6, 2025 in any manner as alleged by Plaintiff.  However, because a review of the Western District of Michigan docket on December 1, 2025 revealed that Plaintiff filed a Proof of Service alleging service and that ACH was required to respond to Plaintiff's Amended Complaint by December 1, 2025, Defendant ACH filed an Emergency Motion for Enlargement of Time to Respond to Complaint on the same date.  (**ECF No. 15, PageID.94**).

On December 3, 2025, the Court entered its order granting Defendant ACH's Motion for Enlargement of Time, extending ACH's time to respond to the Complaint to December 8, 2025. (**ECF No. 16, PageID.101**).  In granting the motion, the Court found that good cause existed for the extension, and the Court noted as follows:

> On October 23, 2025, this Court ordered plaintiff to show cause, in writing, why her claims against defendant ACH should not be dismissed without prejudice for failure to complete service. Instead of responding in writing to the Court's Order, plaintiff filed a proof of service that the Summons and Complaint had been served on defendant ACH via certified mail on November 6, 2025.  (*Id.*) (citations omitted) (emphasis added).

Based upon the foregoing facts and the arguments below, Plaintiff failed to timely and/or properly serve ACH with her Complaint, and there is no good cause for same.

B. **Substantive Facts**

Plaintiff's Amended Complaint alleges that ACH was contracted by Clinton County to provide medical services to inmates at the Clinton County Jail and is responsible for control and oversight of the operation and staff of medical services at the jail. (**ECF No 9, PageID.40, ¶5**). Plaintiff does not name any medical personnel in this matter, nor any employees or agents of ACH. Instead, Plaintiff names and brings his suit against "John Does, to be named individually and as employees/agents [of] Clinton County." (*Id.* at **Page.39**). Plaintiff alleges that "CCSO employed CCJ staff and is liable for their acts. The CCJ is also liable because of its policies, practices, and customs, which led to this complaint of violation." (*Id.* at **PageID.42, ¶10**). In Paragraph 11 of Plaintiff's Complaint, Plaintiff states:

> 11. Defendants are all being sued in their individual and official capacities. Defendant *Clinton County* is being sued under a *Monell* theory of liability for enacting policies, whether written or unwritten, that demonstrated deliberate indifference of suspects in its custody, such as *Jane Doe No. 2*. Such deliberate indifference is directly responsible for *Jane Doe No. 2's* significant and continuing debilitating physical and mental injuries. (**PageID.42, ¶11**).

Plaintiff does not allege that ACH is being sued under a Monell theory and does not name any ACH employee.

In Plaintiff's "Factual Background" section, Plaintiff alleges that she was booked at the jail on March 28, 2024 for a bond violation, and that "almost immediately after being lodged" she started vomiting and showing signs of medical distress that "CCJ Staff" were deliberately indifferent to. (**PageID.42-43, ¶1**). Plaintiff alleges that, on March 28, 2024, she was in "obvious health distress" at an 8:30 a.m. bond hearing and was taken to Sparrow Hospital. (**PageID.43, ¶4**). Plaintiff alleges that, at around 2:41 p.m., while at Sparrow Hospital for over six (6) hours after her bond hearing, she lost consciousness and went into Torsade's cardiac arrest and flatlined for

5-10 seconds before her Defibrillator restored her pulse. (**PageID.43, ¶5**).[1]  Plaintiff alleges that, while at Sparrow, she "was sent to the Intensive Care Unit (the "ICU") due to Defibrillator firing while she had significant electrolyte abnormalities directly attributable to her cardiac incident that went entirely overlooked by **CCJ Staff**. She acquired long term QT syndrome ("LQTS") from electrolyte abnormalities." (**PageID.44, ¶6**). It appears, but is unclear, that Plaintiff is alleging that the "CCJ staff" caused Plaintiff's Defibrillator to misfire. However, it appears from Plaintiff's allegations that she already had regular electrolyte deficiencies for a long time prior to coming to the Clinton County Jail and a prior heart attack related to the Defibrillator. (**PageID.45, ¶9, and PageID.43, ¶5**).

As will be discussed in more detail below, Plaintiff's only mention of a medical person's alleged involvement is in Paragraph 7, where she alleges that *"CCJ only had one nurse on duty, and the nurse refused to provide any care to Jane Doe No. 2…"*(i.e. Ms. Essenberg). (**PageID.44, ¶7**).  There is no indication or description of the alleged nurse nor any facts surrounding the alleged nurse or any alleged encounters with the alleged nurse.

In Count 1 of Plaintiff's Complaint, Plaintiff generally alleges violations under the Fourth, Fifth, and Fourteenth Amendments. (**PageID.47-49, ¶¶19-26**).  However, Plaintiff fails to allege which particular individual Defendant violated Plaintiff's civil rights and fails to describe how each particular individual Defendant's actions apply to or invoke the specific amendment that Plaintiff describes as being violated.  (*Id.*).  Instead, Count I collectively refers to "CCJ" and "CCJ Staff" as committing various general and generic actions.

---

[1] It appears that Plaintiff is alleging that she had a defibrillator installed in July 2022 and suffered a heart attack when it was installed. (**PageID.43, ¶5**).

In Count 2 of Plaintiff's Complaint, Plaintiff alleges Eighth Amendment violations. (**PageID.49**, ¶¶28-31). Again, Plaintiff fails to allege which particular individual violated Plaintiff's Eighth Amendment rights and fails to describe how each particular individual Defendant's actions constitute an Eighth Amendment violation.  (**Id.**). Instead, Count 2 collectively refers to "CCJ" and "CCJ Staff" as committing various general and generic actions.

In Plaintiff's "Prayer for Relief," she provides no detail as to any Defendant, and particularly ACH, regarding any constitutional right that ACH allegedly violated.  (**PageID.50**). She again reiterates that "agents of Clinton County" are responsible for her alleged damages.

As demonstrated above, because ACH was not timely and/or properly served and Plaintiff's Complaint fails to state a claim against ACH, this Motion to Dismiss now follows.


## II.    LAW AND ARGUMENT

### A.  Plaintiff's Complaint Should be Dismissed Against ACH Pursuant to Fed. R. Civ. P. 4(m) for untimely and improper service.

As discussed above the allotted time for service expired in this matter on July 1, 2025. (**ECF No. 13, PageID.90**), with Plaintiff failing to file any motions to extend, and failing to respond to the Court's October 23, 2025 show cause order requiring Plaintiff to demonstrate her efforts to serve ACH during the allotted 90-day time period for service, and failing to demonstrate good cause for her failure to serve within the allotted time and why her case should not be dismissed.  Fed. R. Civ. P. R. 4(m) provides as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The determination of good cause is left to the sound discretion of the district court. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) An attorney's misunderstanding of the law regarding service does not constitute good cause. *Turley v. Ackley*, 2008 U.S. Dist. LEXIS 24576, 2008 WL 820393 at *2-3 (N.D. Ohio March 25, 2008).  "Good cause necessitates a demonstration of why service was not made within the time constraints…"  *Habib v. GMC*, 15 F3d 72, 73 (6th Cir., 1994).

Here, Plaintiff allowed her allotted time for service to expire on July 1, 2025, without accomplishing service. Indeed, by the time this Court issued its show cause order on October 23, 2025, approximately 204 days had surpassed with no service. (**ECF No. 13, PageID.90**). According to the Court's docket, Plaintiff filed absolutely no motion to extend her time for service, nor demonstrated any other actions that were taken to serve ACH.  It was not until <u>after</u> the timeframe for service expired, and <u>after</u> the Court issued its show cause order that Plaintiff appears to have attempted service.  See *Kircher v. City of Ypsilanti*, 2006 U.S. Dist. LEXIS 72312, *5 (E.D. Mich., Oct. 4, 2006), holding:

> Absent a showing of good cause as to why service was not properly achieved in a timely fashion, the district court, upon motion or sua sponte after giving notice, must dismiss the suit as to all unserved parties. *See Habib v. GMC*, 15 F.3d 72, 73 (6th Cir 1994)…In the present case, Plaintiffs' most recent <u>summons expired</u> on February 18, 2006. The Court finds that Plaintiffs have not demonstrated good cause for their failure to properly serve Defendant Ichesco. In light of Plaintiffs' repeated failures to comply with the rules of procedure and their <u>failure to respond to the Court's Order to Show Cause, the Court will not extend or issue a new summons</u>.

In the circumstance where a plaintiff fails to take any affirmative action to cure his untimeliness until after the expiration of a deadline, a plaintiff must show not simply good cause, but excusable neglect. See *Bass v. Experian Info Solutions, Inc*, 2025 LX 437145, at *1-2 (E.D. Mich., Oct. 22, 2025):

Bass seeks to serve Experian at another address after the summons expired under Rule 4(m). The Court may modify deadlines for good cause. Fed. R. Civ. P. 16(b)(4). But when a party seeks an extension after the deadline, the Court must also apply Federal Rule of Civil Procedure 6(b). *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 240-42 (E.D. Ky. 2018). Under Rule 6(b), when a motion for extension [*2] is made after the relevant deadline, the moving party must show excusable neglect. *Id.* To decide whether a party's tardiness is due to "excusable neglect," courts weigh these equitable factors: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Century Indem.*, 323 F.R.D. at 241-42.

Bass has not shown excusable neglect. Bass knew that CT Corporation was Experian's registered agent and included the Glendale address in her complaint.

Therefore, Defendant ACH argues that Plaintiff must not only show good cause, but also excusable neglect for her failure to timely serve. Here, there is simply no good cause or excusable neglect.

In this case, Plaintiff filed a proof of service alleging that, on November 6, 2025, her counsel served ACH via certified mail in Chicago, Illinois (**ECF No. 14**). This alleged service of process occurred approximately 218 days after the Complaint was filed. There is no good cause for the Court to allow Plaintiff to serve her Complaint after nearly 218 days since filing the lawsuit, 128 days after the expiration of the original 90-day period by which Plaintiff was to serve the original Complaint, and 185 days after filing the Amended Complaint.

Rule 4 of the Federal Rules of Civil Procedure renders dismissal after the allotted time for service expires to be "mandatory rather than discretionary in the absence of good cause or a request for extension of time." *United States v. Gluklick*, 801 F2d 834, 837 (6th Cir., 1986). Also, it is well-settled that "counsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause." *Friedman v. Estate of Presser*, 929 F2d 1151, 1157 (6th Cir., 1991). In *Friedman*, the court did not find good cause where the court found that "

"[c]onsidering the totality of the circumstances, plaintiffs' efforts to properly serve defendants were half-hearted at best."  *Id.*

Because ACH is registered as a foreign profit corporation in the State of Michigan, ACH is not difficult to serve at all.    When simply going to the state of Michigan's website,    https://mibusinessregistry.lara.state.mi.us/search/business,    and typing "Advanced Correctional Healthcare, Inc." in the search box, and then clicking the green box, all of the pertinent information that is necessary to serve ACH will pop up, including that ACH's resident agent is "The Corporation Company" and the resident agent's address.  <u>This very simple search is reflected below (see also **Exhibit A**), and is available to anyone in the general public with access to the internet, and takes only a minute to complete</u>:



It is unclear and unfathomable why Plaintiff did not simply take one to two minutes to research the State of Michigan LARA website (referenced above) and simply have a process server deliver the Summons and Complaint to ACH's resident agent right here in Michigan within ninety (90) days of filing this lawsuit. It simply makes no logical sense whatsoever, and this Court should not be persuaded otherwise.  In light of the easy access to ACH's resident agent in Michigan, it is completely unreasonable for Plaintiff to allegedly have been unable to timely serve ACH within the time frame allotted under Rule 4.  This is exactly the type of "half-hearted efforts to timely serve a defendant" discussed in *Friedman* that will never suffice as good cause to avoid dismissal

for failure to timely serve.  The Plaintiff's alleged efforts to timely serve ACH have not only been half-hearted but are simply inconceivable.  And, under the above circumstances, there is certainly no excusable neglect for Plaintiff's untimeliness in serving her Complaint.

Not only is the alleged service that supposedly occurred on ACH untimely, but it is also improper.  ACH was never served with the Complaint and never received Plaintiff's Complaint in any manner alleged by Plaintiff's November 9, 2025 Proof of Service.  The "Federal Rules of Civil Procedure do not permit service of process on a corporation by mail, or service of process on any party by mail, only waiver of process can be properly delivered by mail." *Walker v. Brooke Corp.*, 2009 U.S. Dist. LEXIS 50909, *5 (E.D. Mich., Jun. 17, 2009) (citing *Staudte v. Abrahams*, 172 F.R.D. 155, 156 (E.D. Pa. 1997).  See also *Nieves v. Kieker AG*, 2020 U.S. Dist. LEXIS 201606, *5-6 (E.D. Mich., Oct. 29, 2020), holding:

> Fed. R. Civ. P. 4(h)(1)(A) also allows for service of a private corporation "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction in the state." (quotes as in original).

Under MCR 2.105(D), which sets forth Michigan's rules regarding service on corporations, "certified mail is not a proper way to serve a corporation in Michigan."  See *Nieves*, *supra*, at *7.  Therefore, Plaintiff's alleged or attempted service by certified mail is improper under both Michigan and Federal law.

Furthermore, Plaintiff's alleged or attempted service is improper under Illinois law.  According to Plaintiff's Proof of Service, it appears that Plaintiff Essenberg and/or her counsel allegedly mailed a certified letter to a corporate resident agent office, CT Corporation Services, which Plaintiff alleges "is designated by law to accept service of process on behalf of Advanced Correction Healthcare, Inc."  (**ECF No. 14, PageID.92**).  This is improper.  735 Ill. Comp. Stat. 5/2-204 provides, in pertinent part:

10

> A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law.

See also *Martin v. United States Wireless AT&T*, 765 F Supp 3d 756, 762 (S.D. Ill., 2025) (**Exhibit B**), where an Illinois federal district court very recently confirmed that certified mail on a corporation is not proper service:

> Under Illinois law, a corporation may be served by "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 ILCS 5/2-204. "<u>Certified mail is . . . not listed as an appropriate method of serving corporations in the text of the Federal Rules or the relevant [Illinois] statutes.</u>" *Goode v. PennyMac Loan Servs., LLC*, No. 14 C 01900, 2014 U.S. Dist. LEXIS 161484, 2014 WL 6461689, at *9 (N.D. Ill. Nov. 18, 2014). (emphasis added).

Therefore, Plaintiff's alleged November 9, 2025 Proof of Service form suggesting that she served ACH via certified mail on November 6, 2025 is completely improper, since it does not constitute proper service in Illinois.  This would explain why ACH has no record of being served on November 6, 2025.

Based upon the foregoing reasons, Plaintiff has (1) failed to timely serve ACH, and (2) attempted improper service on ACH.  Since, at the time of filing the herein motion, it has been more than <u>250 days</u> since the Complaint was filed, there is no good cause for Plaintiff's failure to timely and properly serve and certainly no excusable neglect.  Given the ease at which ACH could have been served by Plaintiff simply taking one to two minutes to go to the State of Michigan website over <u>250 days</u> ago, there is simply no good cause or reasonable excuse to allow this case to continue against ACH.  The Court should promptly dismiss this matter against ACH pursuant to Fed. R. Civ. P. 4(m).

**B.  Plaintiff Has Failed to State a *Monell* Claim Against ACH Under 42 USC § 1983.**

"Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory,' but rather 'for a policy or custom *of that private contractor.*'" *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing and quoting *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original). Regardless of the underlying constitutional violation, a policy, practice, or custom can be established only if "a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Id.* at 901 (quoting *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015)). Under any approach, a plaintiff must plausibly allege that the policy is the "'moving force' behind the violation of the plaintiff's constitutional rights." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 691 (6th Cir. 2013) (quoting *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)).

To state a claim of deliberate indifference against ACH, Plaintiff must plead that a policy, practice, or custom of ACH is unconstitutional, and that claim must be specific. "[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the [defendant] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)), cert. denied, 114 S. Ct. 1219, 127 L.Ed.2d 565 (1994). *See also, Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). It is insufficient for a plaintiff to make allegations that ACH has or had some non-specific unconstitutional policy, practice, or custom. A plaintiff is required to <u>identify</u> and <u>connect</u> the allegedly unconstitutional policy to ACH and demonstrate a <u>pattern</u>. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-433 (6th Cir. 2005).

12

The Sixth Circuit also has articulated the requirements for a municipal liability claim made on the basis of an "inaction theory," where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched. Under such a theory, the plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996).

Even if Plaintiff sufficiently plead an unconstitutional policy of ACH, which she did not, such a policy must be the basis of "a clear and persistent pattern of illegal activity." *Thomas*, 398 F.3d at 433 (citing *Doe v. Claiborne County*, 103 F.3d at 508 (6th Cir. 1996)). Plaintiff has not alleged, much less shown, such a pattern of unconstitutional conduct. "[A]ttempting to infer a municipal-wide policy based solely on one instance of potential misconduct…would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard." *Id.* at 432-433. This has been clearly forbidden by the Supreme Court. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] plaintiff 'cannot rely solely on a single instance' to prove the existence of a constitutional custom." *Gregory v. City of Louisville*, 444 F.3d 725, 773 (6th Cir. 2006). Also, Plaintiff has not alleged that any similar situation such as what happened in Ms. Essenberg's unique facts has ever happened before.

Furthermore, Plaintiff has not alleged how any alleged unconstitutional policy of ACH was the "moving force" behind Plaintiff's decedent's injury. In *Maxwell*, *supra*, the plaintiff's complaint alleged a list of "policies, practices, and customs" of CMS and PHS and then alleged

13

that those "policies, practices, and customs resulted in Plaintiff suffering almost constant pain for the entire time of the most recent incarceration." *Maxwell*, 538 Fed. Appx. at 692. The Sixth Circuit held that those allegations were insufficient to allege a *Monell* claim, which requires that the plaintiff allege that a custom, policy, or practice was the "moving force" behind a violation of the plaintiff's constitutional rights as required for a municipal liability claim. *Id.* at 691-692.  The Sixth Circuit has ruled that such conclusory allegations do not "state a claim to relief that is plausible on its face." *Maxwell*, at 692 (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (quoting *In re Travel Agent Comm'n*, 583 F.3d 896, 903 (6th Cir. 2009)).

As to the specifics of any potential Monell claim that the Plaintiff is attempting to assert in her Complaint, Plaintiff clearly states that "<u>Defendant Clinton County</u> is being sued under a Monell theory of liability for enacting policies, whether written or unwritten, that demonstrated deliberate indifference of suspects in custody." (**PageID.42, ¶11**). Nowhere does Plaintiff allege that ACH is being sued under a Monell theory.

In Count I of Plaintiff's Complaint, Plaintiff generally alleges that "CCJ" and "CCJ staff" violated Plaintiff's rights by delaying Plaintiff from going to the hospital and "detaining her given her medical condition." (**PageID.47-48, ¶¶20-23**).  There is not one mention of ACH in any of those paragraphs, nor any mention of the phantom nurse being involved in any specific circumstances, including objectively or subjectively.  And, certainly, a nurse does not "detain" anyone. Plaintiff is even critical of the criminal court judge who ordered Plaintiff to return to the jail immediately after her treatment at Sparrow Hospital, stating that the judge's conduct was "asinine and arbitrary," and "adding insult to injury." (**PageID.45, ¶10**).

14

In Paragraph 17, Plaintiff lumps in ACH, alleging that "despite CCJ and ACH policies and procedures, CCJ staff tolerated policies exhibiting a complete disregard and deliberate indifference of inmates' health and/or sanitary and/or safety needs…"  (**PageID.46 ¶17**).  First, that sentence clearly demonstrates that CCJ and particularly, ACH, had proper policies and procedures, but "<u>CCJ Staff</u> (not ACH) tolerated procedures exhibiting disregard and deliberate indifference…"  Second, Paragraph 41 goes on to identify, allegedly, a number of unrelated and unverified instances that "CCJ [not ACH] tolerated in her subparagraphs (a) through (l), with no alleged timeframe of when these alleged instances actually occurred.  (**PageID.12-13**).  All of the underlying factual allegations expressly state that the actions were committed by "CCJ" and "CCJ staff."  Courts "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc v. Treesh*, 487 F3d 471, 476 (6th Cir., 2007) (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).  "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Tam Travel, Inc v. Delta Airlines, Inc*, 583 F3d 896, 903 (6th Cir., 2009) (citing *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In Count II of Plaintiff's Complaint, which specifically concerns the Eighth Amendment, all of the allegations of wrongdoing or violations again concern only "CCJ" and "CCJ Staff." (**PageID.49, ¶¶28-31**). Regardless of whether this is a Fourth or Eighth Amendment claim, there is no mention of ACH being involved in any way. The Plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the Complaint. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Plaintiff must state a plausible constitutional violation against each individual defendant – the collective acts of defendants cannot be ascribed to each individual defendant."

15

*Reilly v. Vadlamudi,* 680 F.3d 617, 626 (6th Cir. 2005). Clearly, Plaintiff's Complaint fails to do this.

Finally, Plaintiff has not alleged facts to support a plausible claim that ACH's policies, practices, or customs amount to deliberate indifference. Both an Eighth and Fourteenth Amendment deliberate indifference claim requires knowledge of and disregard of an excessive risk to inmate health or safety. *Farmer v. Brennen*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation omitted). *See also Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 358 (6th Cir. 2013) ("To satisfy the subjective component [of a deliberate indifference claim], a plaintiff must ***allege*** and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care was not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk.") (emphasis added).

If Plaintiff was a pretrial detainee and this is a Fourteenth Amendment claim, in *Grote v. Kenton Cnty.*, 85 F.4th 397 (6th Cir. Oct. 26, 2023), the Sixth Circuit recently clarified its holding on the subjective component, holding that a pretrial detainee must prove "something akin to reckless disregard" to satisfy the second element of a deliberate-indifference claim. *Id*. The Sixth Circuit has held that recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *See City of Taylor Gen. Employees Ret. Sys. v. Astec Indus.,* 29 F.4th 802, 812 (6th Cir. Mar. 31, 2022) (quoting *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016)) (emphasis added). Accordingly, "[r]ecklessness requires more than [mere] negligence . . ." *Id.*  (emphasis added).

16

Here, Plaintiffs' Complaint alleges deliberate indifference under 42 U.S.C. § 1983, but states no specific actions by any medical person that would constitute deliberate indifference. The complaint must contain either direct or inferential allegations showing all the material elements under some viable legal theory to state a claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Fundamentally, "there can be no liability under Monell without an underlying constitutional violation" by an ACH employee. *Robertson v. Lucas*, 753 F3d 606, 622 (6th Cir., 2014). Plaintiff's Complaint alleges that ACH contracted with Clinton County to provide medical services to Clinton County Jail inmates. (**PageID.40, ¶5**). But the only single reference to an actual medical person being involved in Plaintiff's Complaint is in Paragraph 7, where she alleges that *"CCJ only had one nurse on duty, and the nurse refused to provide any care to Jane Doe No. 2..."*(i.e. Ms. Essenberg). (**PageID.44, ¶7**). There is no indication or description of the alleged nurse and no facts indicating anything about the circumstances surrounding any interaction with an alleged nurse (e.g., when did the nurse see her, how did Plaintiff attempt to see the nurse, what was allegedly discussed, what did the nurse know, what was Plaintiff's condition when she saw or interacted with the alleged nurse, what is the timeframe of any interaction with the nurse relative to Plaintiff's alleged injury on March 28, 2024. Simply put, a single sentence that the phantom nurse "refused to provide any care to [Plaintiff]" is insufficient to state the objective and subjective components of a viable deliberate indifference claim consistent with the legal requirements set forth above.

Not only does Plaintiff's Complaint fail to set forth a legal claim, but for reasons already recently investigated in another Western District of Michigan federal court case involving the same Plaintiff's attorney, many of the same defendants and similar time periods, it is doubtful that any

of these allegations ever occurred or that a nurse was even involved at all.  Within a week of filing

this case, Plaintiff attorney (Dragon Lawyers, PC) filed the lawsuit of *Ludwick v. Clinton County,*

*et. al.* (formerly Jane Doe No. 1) against Clinton County, Sheriff Dush, deputies, and ACH.

Plaintiff further named a nurse, LPN Thelen, who had not worked at the jail for more than four (4)

years prior to the time of Plaintiff's incident.  Clearly, the *Ludwick* allegations regarding the nurse

were either ill-contrived, made up, or time barred. LPN Thelen promptly filed a Motion to Dismiss

and, alternatively, Motion for Summary Judgment.  On November 26, 2025, an R&R was issued

by Magistrate Judge Berens on LPN Thelen's motion, finding and recommending as follows:

> Defendant Thelen has presented an affidavit stating that she has not worked at the
> CCJ since October 2019. Because the alleged unconstitutional acts occurred in June
> 2023, Thelen's affidavit demonstrates that she was not present in the CCJ during
> that time and could not have violated Ludwick's Eighth Amendment
> rights…Ludwick fails to present any competent evidence refuting Defendant
> Thelen's affidavit. (Michaela Ludwick (formerly Jane Doe #1).
> \* \* \*
> Ludwick argues that Defendant Thelen "has been the target of other deliberate
> indifference claims while she worked at the CCJ in the past." (ECF No. 37 at
> PageID.196.) Ludwick's mention of *Hehrer* is curious, as the events in that case
> occurred no later than March 2019—more than six months before Defendant
> Thelen claims she last worked at the CCJ.
> \* \* \*
> In her deposition in *Hehrer*, Defendant Thelen testified that she quit working for
> Advanced Correctional Healthcare in the "fall or winter of 2019." ECF No. 121-5
> at PageID.3476–77. This  is consistent with Thelen's affidavit stating that she has
> "not worked for Advanced Correctional Health nor in the Clinton County Jail since
> October of 2019." (ECF No. 30-1 at PageID.156.)

(See **Ludwick, No. 1:25-cv-320, ECF No. 38, PageID.202-204, and fn2**).

Here, just like in *Ludwick*, the Complaint has generically referenced a nurse's involvement.

But for reasons stated above, although Plaintiff Essenberg does not name a nurse, she actually has

alleged no facts and allegations that would indicate any objective or subjective component of

deliberate indifference by any nurse, therefore failing to state a claim.

In sum, Plaintiff has failed to adequately allege the required elements of a deliberate indifference claim and Monell claim based on policies, practices, or customs of ACH. Under *Twombly* and *Iqbal* it is no longer enough for a plaintiff to promise that she will be able to come up with the facts to support a claim following discovery. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008). Federal Rule of Civil Procedure 8 does not allow a plaintiff who has nothing but legal conclusions to file a complaint devoid of facts and then conduct discovery to locate support. *See Iqbal*, 556 U.S. at 678-679.

### III.    CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint Against ACH Pursuant to Fed. R. Civ. P. 41(m) and Fed. R. Civ. P. 12(b)(6) in its entirety and provide any and all such relief as is deemed just and equitable.

Dated:  December 8, 2025

Respectfully submitted,
CHAPMAN LAW GROUP
*/s/Devlin Scarber*
Devlin K. Scarber (P64532)
Attorney for Advanced
Correctional Healthcare, Inc.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

19

## <u>PROOF OF SERVICE</u>

I hereby certify that on December 8, 2025, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system.

*/s/ Carolina Andrade*

Carolina Andrade, Legal Assistant

**On Behalf of Devlin Scarber (P64532)**
